**ROBERTS et al. v. MEDLOCK.**

No. 4404.

Court of Appeal of Louisiana. Second Circuit.

June 5, 1933.

Redmond & Thompson, of Monroe, for appellants.

G. Allen Kimball, of Monroe, for appellee.

MILLS, Judge.

On March 23, 1932, Charles B. Roberts and John D. Miller, plaintiffs, contracted to sell, and William Medlock contracted to buy, lot 2 of block 4 of Miller's Second addition to the city of Monroe. It was stipulated that defendant should receive a good and merchantable title and should pay a cash consideration of $300.

Plaintiffs bring this suit to enforce specific performance, alleging that they have tendered a deed conveying the required title, but that defendant wrongfully and unjustifiably refused to accept same and pay the price on the ground that the title so tendered is not merchantable.

From a judgment rejecting their demand, they appeal to this court.

Defendant's objection is that plaintiffs claim to have acquired title to the lot in question by virtue of a sheriff's sale to them made in the suit of John D. Miller and Charles B. Roberts v. Burke Mann et al., brought January 7, 1914, in the parish of Ouachita to effect a partition of the estate of George W. Miller, deceased; that in neither the sheriff's deed, dated August 1, 1914, nor in any of the proceedings on which it is based, is the lot in question particularly described; that the general description contained in said deed, "Also all money on hand or in any manner belonging to and due said estate, as well as all other property, rights and credits belonging to the estate of G. W. Miller, deceased, of whatever nature and kind," did not convey good and legal title to said lot to plaintiffs, and did not divest the heirs of George W. Miller of their title to and ownership thereof.

It being conceded that title was good in the succession, the only issue presented is whether or not the general description in the sheriff's deed, in said suit, conveyed a good and merchantable title.

An examination of the partition record discloses that plaintiffs in that action, John D. Miller and Charles B. Roberts, are the same as in the present suit; that they alleged an ownership by purchase of a five-sixths interest in the estate of George W. Miller in indivision with his heirs, who are made parties defendant, John D. Miller claiming an additional one-sixth of one-sixth by inheritance; that they desire a partition by licitation of said estate, the prayer of the petition being that: " * * * all the property, rights and credits belonging to said estate be sold to effect a partition."

On the trial, John D. Miller, the only witness on the subject, testified:

"Q. Now, do you believe that it would be more advantageous to sell in bulk or to sell each piece separately? A. I think, in the shape it is in, it should be sold in bulk, I don't think we should sell it—

"Q. Why do you say so? A. At times, lots of the stuff—lots of the stuff that we have I don't think is good and really I think there is some stuff that we really haven't got on the record inventory."

Judgment was thus rendered with full notice to all parties that there was probably some property belonging to the succession that did not appear on the inventory. As no inventory appears in the record, we presume the one referred to was that taken in a prior succession proceeding referred to in the pleadings.

The wording of the judgment shows that it was purposely drawn to include any property belonging to the succession but not inventoried. It reads, in part:

"It is further ordered that all the property, rights and credits, belonging to the estate of George W. Miller, deceased, as described on the inventory and supplemental inventory in said succession of George W. Miller, deceased, and all other rights, property and credits that may belong in any manner to

said estate be sold in block as a whole, by the sheriff of Ouachita Parish, Louisiana, or any of his legal deputies at public sale for cash, after legal advertisement for the purpose of effecting a partition."

The commission issuing to the sheriff in accordance with said judgment orders him to seize, advertise, and sell, with a long list of other property particularly described, "Also all funds and money on hand or in any manner due to said estate, as well as all other property, rights and credits belonging to the said succession of George W. Miller, deceased, of whatever nature and kind."

The description in the sheriff's deed, quoted supra, is practically identical with the above.

It being so plain and so plainly expressed, it is not necessary to resort to any canons of construction to arrive at the conclusion that the intention in the whole proceeding was to partition and dispose of all of the property of the succession of George W. Miller, whether inventoried or not. All interested parties had notice of the proceedings, plaintiffs in the present action having also been plaintiffs in the partition proceedings and purchasers at the sale. It is not suggested that there was a failure to make any of the heirs defendants. They were thirty-one in number and all majors except one who was twenty years of age at the time of trial. Their portion of the purchase price was paid to their appointed representative and apparently received by them without protest. The value of the lot was insignificant in comparison to the other property particularly described. Though the sale took place more than seventeen years prior to the institution of the present suit, it is not shown that the rights of any third persons have intervened or that any attack has been made by any heir upon plaintiffs' title.

■ In construing contracts the clear intent of the parties as expressed by them is the law of the case.

■ It is well settled that an heir can dispose of his interest in a succession by a general description. In the present suit the purpose and intent was to dispose of the whole interest of all the heirs of a succession. Defendant has not shown any law prohibiting a sale by such a description. The cases cited by him, Wilfert v. Duson, 131 La. 21, 58 So. 1019, Shelly v. Friedrichs, 117 La. 679, 42 So. 218, Castera's Heirs v. New Orleans Land Co., 125 La. 877, 51 So. 1021, are not in point as they all involve an attempted particular description too vague to identify the land intended to be conveyed.

■ As the heirs of George W. Miller are not parties to this suit, we cannot and do not attempt to pass directly upon the question of title between them and the plaintiffs, purchasers at the partition sale. Praegner v.

Kinnebrew & Ratcliff, 156 La. 132, 100 So. 247; Tessier v. Roussel, 41 La. Ann. 474, 6 So. 542, 824.

We can only consider that question in so far as it affects the merchantability of the title tendered in the present action. The doubtfulness of their case affects the probability of attack by the heirs.

■ A "merchantable title" is one which can be readily sold or mortgaged in the ordinary course of business, to a reasonable person familiar with the facts and apprised of the question of law involved. It need not be free from every technical defect, of all suspicion, or the possibility of litigation. It must be a record title free of rational substantial doubt to the extent that a purchaser should feel that he can hold his purchase in peace without the probability of attack and with reasonable assurance that it will be readily salable on the open market. Billick v. Davenport, 164 Iowa, 105, 145 N. W. 470; Cappel v. Potts, 192 Iowa, 661, 185 N. W. 148; McConnell v. Deal, 296 Mo. 275, 246 S. W. 594; McLaughlin v. Nelson, 113 Neb. 308, 202 N. W. 871; Moser v. Tucker (Tex. Civ. App.) 195 S. W. 259; Lamotte v. Steidinger, 266 Ill. 600, 107 N. E. 850; Arnd v. Lerch, 162 Md. 318, 159 A. 587; Crow Creek Gravel & Sand Co. v. Dooley, 182 Ark. 1009, 33 S.W.(2d) 369.

The word "merchantable" implies something less than a perfect title and permits of defects which are not reasonably liable to result in assault. This presents a question of fact as well as one of law.

Miller and Roberts, at the time they brought the partition suit, were the owners of a five-sixths interest in the succession by purchase from the heirs. Miller, in addition, inherited one-sixth of one-sixth, leaving only five-sixths of one-sixth in the remaining heirs. They are thirty-one in number, some residing in Tennessee and some in Arkansas.

■ The consideration agreed to be paid for the lot in question is $300. The interest of the heirs would be $41.67 to be divided in various proportions among thirty-one persons. Considering that there has been no disturbance of plaintiff's title for seventeen years, the doubtful success of any attempt to attack same, the number of heirs, their diversity of residence, and the insignificant interest of each, we cannot feel that it is threatened by any substantial danger of serious litigation, and that it is therefore merchantable as that term has been judicially defined.

■ The objection that the lot in question was not inventoried or appraised as required in partition proceedings by article 1324 of the Revised Civil Code is answered by the decision in the case of Barbarich v. Meyer, 154 La. 325, 97 So. 459, 460, wherein it is held:

"He further complains that the partition was not preceded by a formal inventory. But the property to be partitioned was examined by experts, who reported that it could not be divided in kind, and that the partition should be by licitation (i. e., sale of the property and division of the proceeds), which was ordered by the court.

"It is well settled that property sold to effect a partition, may be sold for whatever it will bring at public sale, regardless of any appraisement.

"Therefore, when the Code requires that every partition shall be preceded by an inventory and appraisement made within a year, it has reference to partitions in kind, for—

" 'The first step to be taken in a partition * * * is to ascertain whether a division in kind is practical without a serious diminution of its value, or loss or inconvenience of one of the owners.' Paul v. Lamothe ['s Heirs], 36 La. Ann. 318, 319.

"And where it is manifest, or shown by the evidence, that the property is not divisible in kind, the taking of a formal inventory would be nothing more than a useless and costly formality, which the law does not require. Hansell v. Hansell, 44 La. Ann. 549, 10 So. 941; Paul v. Lamothe ['s Heirs], 36 La. Ann. 318, 319."

Suits of this character have been frequent in this state. They all support the proposition that a vendee cannot be compelled to accept title to property which suggests future serious litigation. Some of the cases in which the danger has been held serious are: Beer v. Leonard, 40 La. Ann. 845, 5 So. 257; Tessier v. Roussel, 41 La. Ann. 474, 6 So. 542, 824; James v. Meyer, 41 La. Ann. 1100, 7 So. 618: Mallard v. Dejan, 45 La. Ann. 1270, 14 So. 238; Lyman v. Stroudbach, 47 La. Ann. 71, 16 So. 662; Neuhauser v. Barthe, 110 La. 825, 34 So. 793; Michenor et al. v. Reinach, 49 La. Ann. 360, 21 So. 552; Carter v. Morris Bldg. & Land Improv. Ass'n, 108 La. 143, 32 So. 473; Praegner v. Kinnebrew & Ratcliff, 156 La. 132, 100 So. 247; Marsh v. Lorimer, 164 La. 175, 113 So. 808.

They present briefly the following serious situations:

A minor's mortgage on one-half of the property improperly canceled.

Title to a one-half interest bad because the appointment of a tutor to minors was an absolute nullity.

Where land concerned was already in litigation.

Not compelled to accept title from a wife where separation of property was a nullity because of lack of jurisdiction.

Where title not clear until removal of an encumbrance by litigation.

Where prescriptive title to one-half of property clearly not good.

Where there is a serious danger of eviction.

Not compelled to take title from husband where he is party to deed declaring property purchased by wife with her separate funds.

Where judicial sale is a nullity because made without an order of the court.

Cases wherein the vendee has been compelled to take title are:

Getman v. Harrison, 112 La. 435, 36 So. 486, wherein it was held that the court must determine whether or not a title is suggestive of serious litigation after considering the facts upon which such a suggestion is founded. In that case the court found the danger not serious.

In Grasser v. Blank, 110 La. 493, 34 So. 648, it was held that one refusing to accept title after an agreement to buy must point out some substantial threatening danger not a mere remote possibility.

The objections in this case to partition proceedings and donations appearing in the chain of title were held not serious.

Quoting from Woolverton v. Stevenson, 52 La. Ann. 1147, 27 So. 674, 677: "The risks of the situation, if any, are remote, and the purchaser, by becoming the adjudicatee, must take them."

The risks involved a partition by licitation, of which the court said that where property has been sold to effect a partition by licitation, and gone into the hands of third persons, the partition will not be rescinded by reason of the omission from the partition of property of insignificant value.

In Metairie Park v. Currie, 168 La. 588, 122 So. 859, a purchaser was required to take title where a deed prior in date was registered nine years after registry of grantor's deed.

In Westerfield v. Cohen, 130 La. 533, 58 So. 175, and Pattison v. Maloney, 38 La. Ann. 885, a purchaser was forced to accept a prescriptive title where no serious danger of judicial attack is suggested.

In Re Louisiana Savings Bank & Safe Deposit Co. in liquidation, 48 La. Ann. 1428, 20 So. 909, and Norton v. Enos, 158 La. 423, 104 So. 194, alleged defects were held not substantial.

Considering all the facts, as well as the law, in this case we are satisfied that the title tendered is at least good and merchantable and that the lower court erred in holding otherwise.

The judgment of the lower court is accordingly reversed, and judgment is now rendered in favor of plaintiffs and against defendant requiring defendant to, within ten days from registry of this judgment in the lower court, accept title to lot No. 2 of block 4 of Miller's Second addition to the city

of Monroe, La., and to pay the consideration of $300 therefor.

If defendant fails to pay said consideration in cash, upon tender of a deed being made within said time, then and in that event plaintiffs shall have judgment against him in the full sum of $300 with legal interest thereon from date of judicial demand until paid. Defendant to pay costs of both courts.