(113 So. 808)

No. 28425.

MARSH et al. v. LORIMER et al.

April 25, 1927. Rehearing Denied July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. **Vendor and purchaser** ⊜⟹87—Sales; vendors cannot insist on original purchaser fulfilling contract on theory that second contract to sell to another is null.

Vendors executing contract to sell land, after contracting to sell it to another, acquiesced in latter's position that he was no longer bound by contract because of failure to furnish abstract showing good title within time required, and cannot insist on his fulfilling contract on theory that second contract is null.

2. **Specific performance** ⊜⟹95—Vendors executing second contract to sell land could not convey title to original purchaser free from incumbrances, and hence could not insist on his fulfilling contract.

Vendors executing contract to sell land, after contracting to sell it to another, ceased to be in position to convey title to original purchaser free from all incumbrances, except specified liens, as agreed, and hence could not insist on fulfillment of original contract.

3. **Vendor and purchaser** ⊜⟹134(1)—Sales; that original contract takes precedence does not obviate original purchaser's objection that second contract to sell to another is incumbrance on title.

That contract to purchase land, signed and recorded before vendor's second contract with another, takes precedence over latter, which therefore may be annulled, is not sufficient answer to original purchaser's objection that second contract is incumbrance on title; title tendered being reasonably suggestive of litigation.

4. **Vendor and purchaser** ⊜⟹129(1)—Sales; purchaser need not accept title reasonably suggesting litigation.

Promisee in contract to sell is not called on to accept title which may reasonably suggest litigation.

5. **Vendor and purchaser** ⊜⟹144(1)—Sales; purchaser need not wait until vendor, by litigation, removes incumbrance, placed on land by him since execution of contract, but may refuse to perform.

Promisee in contract to sell is not called on to wait until promisor, by litigation, removes incumbrance, which he placed on land since execution of contract and must remove in order to perform contract, but may refuse to perform.

6. **Appeal and error** ⊜⟹877(2)—Vendor suing for specific performance cannot complain of dismissal as to subsequent purchaser made party in effort to procure cancellation of his contract and enable vendor to offer clear title.

Purchaser not being called on to wait until annulment of second contract to sell land to another, made party to vendors' suit for specific performance of original contract for purpose of annulling second contract, there was no error, of which plaintiffs could complain, in sustaining exception of improper cumulation of actions and misjoinder of parties to extent of dismissing suit as to second purchaser.

7. **Vendor and purchaser** ⊜⟹3(4)—Sales; contract to purchase land on certain conditions held not "option" entitling vendors to retain amount paid on denial of specific performance.

Contract to purchase land on certain conditions *held* not an "option," for which amount paid when contract was signed was consideration, so as to entitle vendors to retain such amount on denial of their demand for specific performance; party obtaining option acquiring right to purchase, if he sees proper.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Option.]

8. **Vendor and purchaser** ⊜⟹84—Sales; purchaser held not entitled to twice amount paid because of vendors' second contract to sell land to another (Civ. Code, art. 2463).

Purchaser paying stated sum, not as earnest money, but on account of consideration to be paid for land, *held* not entitled to double such

amount, under Civ. Code, art. 2463, because of vendors' execution of second contract to sell land to another.

**9. Vendor and purchaser ☞334(5), 341(5)— Sales; purchaser from parties subsequently contracting to sell to another held entitled to amount paid and interest from date of payment.**

One contracting to purchase land from party subsequently contracting to sell it to another, after failing to furnish abstracts within time required, *held* entitled to repayment of amount paid on consideration, with interest from date of payment.

**10. Appeal and error ☞1152—Purchaser from parties, subsequently contracting to sell to another held entitled to amendment of judgment denying specific performance so as to expressly rescind original contract.**

One contracting to purchase land, which vendors subsequently contracted to sell to another, after failing to furnish satisfactory abstracts within time required, *held* entitled to amendment of judgment denying specific performance of original contract so as to expressly rescind such contract.

Appeal from Fifth Judicial District Court, Parish of Richland; John R. McIntosh, Judge.

Suit by Joseph C. Marsh and others against Leonard Lorimer and another, in which the named defendant filed demands in reconvention. Judgment for the named defendant, and plaintiffs appeal. Amended in part and affirmed in part.

Theus, Grisham & Davis, of Monroe, for appellants.

Francis M. Lowes, of Chicago, Ill., and Hudson, Potts, Bernstein & Sholars, of Monroe, for appellee.

OVERTON, J. This is a suit for the specific performance of a contract to purchase over 8,000 acres of lands in this state, and to annul a contract entered into with the Zenoria Lumber Company by which the contemplated vendors, in the contract which it is sought to enforce, later agreed to sell the same land, or practically all of it, to the Zenoria Lumber Company. The suit was also instituted for the purpose of obtaining, in the alternative, certain relief, should specific performance be denied.

The plaintiffs in the suit are those, or their representatives, who bound themselves to sell by the contract which they now seek to enforce. They were before this court on the same instrument in another suit, in which they treated the contract as a sale, and sued for the balance of the alleged purchase price. It was held, however, that the contract was merely one to sell and not a sale, and the judgment of the lower court sustaining an exception of no cause of action was affirmed, and the case dismissed. McMillan et al. v. Lorimer, 160 La. 400, 107 So. 239. Having failed in that suit, plaintiffs now sue to force the defendant Lorimer to comply with the contract by purchasing, and to recover the consideration alleged to be due, as well as for the remaining relief, mentioned above.

The contract entered into by plaintiffs, or those whom they represent, with the defendant Lorimer, which they are now endeavoring to enforce, is dated May 20, 1920, and was acknowledged on May 25, 1920. By it, plaintiffs agreed to sell and Lorimer agreed to purchase a large quantity of land, mostly covered with hardwood timber, situated in the parish of Catahoula, for the sum of $400,000, of which $75,000 was to be paid, and was actually paid, on the signing of the contract, and the balance was to be paid in installments, maturing 1, 2, 3, 4, 5, and 6 years after the date of the contract, the last installment amounting to $50,000, and the remaining installments to $55,000 each, all of them bearing 6 per cent. per annum interest, payable annually. The deeds to the land were to be executed and delivered on demand, after all installments were paid, save in those instances in which Lorimer might desire to cut timber from parts of the land before payment of all the installments, in which instances it was agreed that deeds would be

executed and delivered to him for such parts on his paying for them $45 an acre. The contract contains a provision requiring Lorimer to pay all taxes and assessments of whatever kind, levied or that may be levied against the land from January 1, 1920, until all the installments provided for by the contract shall be paid, and also another provision according to him the right to take possession of the property and to hold it from the date of the contract until the payment of all installments, as the tenant of plaintiffs by sufferance, and also requiring Lorimer, during said period, to maintain in good condition such improvements as were then on the land and such as might be erected thereon during that time. The contract also contains a provision to the effect that, should the title to 90 acres of the land prove to be not good or merchantable, then Lorimer should have the right to reject the 90 acres and to deduct their value from the final payment, unless plaintiff should perfect title to them within one year from the date of the contract. The instrument also contains a provision reading as follows:

"If the title to any of said lands, except said 90 acres (referring to the foregoing 90 acres), shall be found not good or merchantable in first parties (plaintiff) and title to the same cannot be perfected in first parties within a reasonable time, then and in that event, second party (Lorimer), shall purchase all of said above-described real estate to which the title is good and merchantable, and in case within one year from the date hereof first parties shall perfect any or all of said titles which may be found to be defective, then and in that event second party shall purchase all of the above-described real estate title to which is good, or has been perfected in first parties."

And the contract, after providing for deductions from the final payment or payments, as fixed therein, for lands, the titles to which cannot be perfected, and after making other provisions unnecessary to mention, provides as follows:

"And (parties of first part) will also furnish to second party abstracts of good and mer-

chantable title to the lands and premises above-described free and clear of all liens and incumbrances, except taxes herein agreed to be paid by second party, and except liens and incumbrances created by the act or default of second party, his heirs, legal representatives, or assigns."

Apparently, plaintiffs had the abstracts, called for by the contract, already prepared when the contract was signed, for approximately a week thereafter, Dale, Young & Dale, the attorneys for Lorimer, returned to R. M. Talliaferro, the abstracter employed by plaintiffs, the abstracts, which he had delivered to them, with numerous objections to the title, these objections covering a number of typewritten pages. Plaintiffs undertook to have the defects pointed out by Dale, Young & Dale corrected. On June 1, 1921, a few days over a year after the contract had been signed, the abstracts not having been returned with the defects in the title pointed out by Dale, Young & Dale corrected, Lorimer wrote and mailed to each of the plaintiffs a letter in which, after quoting parts of the contract, relative to defective titles and the furnishing of abstracts, he said:

"Under provisions of said contract, abstracts showing good titles were to be delivered to me within one year from date of contract, May 25, 1920, or, namely, on or before May 25, 1921. The time for this has elapsed, and abstracts showing good and merchantable title have not been delivered. I therefore have the right to terminate the contract for the purchase of said lands, which I hereby do, and this is your notice thereof.

"As to such lands as good title has been shown or delivered and to which Judge Dale made no objection, I will make an adjustment and a payment therefor, under the terms of the contract, and release the other lands to which you have failed to show good title from the terms of the said contract."

With further reference to the defects in the title and the curing of them, it appears from an admission made by counsel for the defendant Lorimer that the defects pointed out by Dale, Young & Dale were cured, and their correction shown by supplemental ab-

stracts, and that all documents, curing the defects, were executed and properly recorded within one year from the date of the contract, but it does not appear from the admission when the abstracts showing the correction of the defects were delivered to Dale, Young & Dale. It appears, however, from the evidence of Judge Dale, which is uncontradicted, that the abstracts, showing any corrections that might have been made, were not returned or offered to his firm until after June 27, 1921, and probably not until July 16, 1921, and that he advised the abstracter that, in view of the position taken by Lorimer, his firm, unless instructed to do so by the latter, would not complete the examination of the titles.

Matters apparently remained in this position until December, 1921, when Lorimer bought a part of the land, embraced in the contract, from plaintiffs for $7,029, which he paid cash. Thereafter, so far as appears, matters remained in statu quo until the summer of 1923, when plaintiffs entered into a contract with the Zenoria Lumber Company to sell to it all, or practically all, of the same lands included in the contract, which they had entered into with Lorimer, and which they now demand that Lorimer fulfill, and gave to that company the right to take possession of the property as a tenant by sufferance, pending the payment of the installments stipulated in the contract, similar to the right granted Lorimer under his contract. In fact, the two contracts are very similar in respect to the rights and obligations of the parties thereto.

The Zenoria Lumber Company has recorded its contract in the parish of Catahoula, where the land is situated, has taken possession of at least a part of the property, and has since the execution of the contract, whether rightfully or wrongly, constructed a tramroad across it.

Plaintiffs realize fully that the execution of the contract by them to sell the land, or practically all of it, to the Zenoria Lumber Company and the recordation of that contract operates as an incumbrance on the property. Therefore, in an effort to give Lorimer the unincumbered title, called for by his contract, they have made the Zenoria Lumber Company a party defendant to this suit, for the purpose of annulling the contract granted it. The trial court dismissed the suit as to the Zenoria Lumber Company on an exception of improper cumulation of actions and the misjoinder of parties defendant. As to whether or not the trial court correctly sustained the exception, as we shall see later, is not a matter of importance here.

[1] As relates to the merits of the case, we are of the opinion that when plaintiffs executed the contract to sell to the Zenoria Lumber Company they acquiesced in the position, taken some time previously by Lorimer, that, in view of their failure to timely furnish abstracts showing a good and merchantable title, Lorimer was no longer bound by the contract he had entered into with them. Under no other theory can we account for the act of plaintiffs in contracting to sell the property, or nearly all of it, to the Zenoria Lumber Company, so utterly inconsistent is it with their selling the same property to Lorimer. Having acquiesced in that position, plaintiffs cannot now shift it and insist upon Lorimer's fulfilling his contract to purchase, upon the theory that the contract which they entered into with the Zenoria Lumber Company is null.

[2-5] Moreover, the contract entered into with that company is an incumbrance on the title. The moment plaintiffs entered into it, granting that prior thereto they were in position to demand specific performance, they ceased to be in such position, for they were no longer in position to convey to Lorimer a title free from all incumbrances, except certain specified liens, which they had contract-

ed to convey, and were not in such position at the time this suit was filed. Nor is it a sufficient answer to Lorimer's objection to the title, which plaintiffs seek to force upon him, to say that, since his contract was signed and recorded before the one entered into with the Zenoria Lumber Company, it takes precedence over the latter, and hence that the latter may be annulled. The promisee in a contract to sell is not called upon to accept a title which may reasonably suggest litigation. Carter v. Morris Building & Land Improvement Ass'n, 108 La. 143, 32 So. 473; 39 Cyc. p. 1454. That the title tendered here is reasonably suggestive of litigation is evidenced by the fact that plaintiffs found it necessary to make the Zenoria Lumber Company a party to this suit in an effort to rid the land of that contract. Nor is the promisee in such a contract called upon to wait until, by litigation, the promisor therein removes an incumbrance which the latter has placed on the land since the execution of the contract, the removal of which is necessary to the performance of the contract by the promisor, but may refuse to perform.

[6] As Lorimer, the promisee, was not called upon to wait until the contract entered into with the Zenoria Lumber Company might be annulled, and as the purpose of making that company a party to this suit was to annul that contract in an effort to place plaintiffs in position to demand performance, it may be also observed, in this connection, that it is not important whether there was error in sustaining the exception of improper cumulation of actions and misjoinder of parties, mentioned above, to the extent of dismissing the suit as to that company. In our view, there was no error in sustaining that exception of which plaintiffs may complain.

Our conclusion is that plaintiffs are not entitled to specific performance, and that the judgment of the trial court in rejecting plaintiffs' demand, in this respect, is correct.

[7] Plaintiffs have also prayed, in the alternative, that, should their demand for specific performance be denied, then the contract sued on be decreed to be an option, and that the $75,000, paid when the contract was signed, be held to be the consideration for the option, and that, since Lorimer failed to take advantage of the option within the time prescribed, it be decreed that all of his rights under it have terminated, and that the contract be canceled. In disposing of this demand it is sufficient to point out that the contract is not one granting an option, for in an option the party obtaining it acquires the right to purchase, should he see proper, whereas, in the contract sued on, the promisee bound himself to purchase, under certain specified conditions. There was no granting of an option. Therefore plaintiffs are not entitled to this relief. It may be observed that, if they were entitled to it, they would not have to return the $75,000 paid them. The trial court did not err in rejecting their demand in this respect.

[8] Lorimer has sued in reconvention for double the $75,000 paid by him when he signed the contract, or for $150,000, on the theory that the $75,000 was paid as earnest money, and that, as plaintiffs receded from the contract by doing acts inconsistent therewith, they should be required, under article 2463 of the Civil Code, to return double the amount paid them. The trial judge refused to allow Lorimer double the amount paid by him, and Lorimer has asked, in his answer to the appeal, that the judgment of the lower court be amended in this respect.

In disposing of this demand, it suffices, we think, to point out that Lorimer did not pay the $75,000 as earnest money, but on account of the consideration to be paid for the land. He is not entitled to this relief.

[9] Defendant has also asked, in reconvention, should double the $75,000 be not al-

lowed him, then that the $75,000 paid by him be allowed, with 5 per cent. per annum interest thereon from May 20, 1920, until paid. The trial judge rendered judgment in favor of Lorimer for that amount, but allowed the interest, prayed for, from July 16, 1923, instead of from. May 20, 1920. Lorimer has asked in his answer to the appeal, which was timely filed, that the judgment be amended so as to allow him interest from May 20, 1920. Lorimer is clearly entitled to be repaid the $75,000 paid by him. He is also entitled to interest from the date of the payment. While the contract is dated May 20, 1920, and the payment is supposed to have been made as of that date, yet the record discloses that the signing of the contract was not completed, and the payment was not made, until May 25, 1920. The judgment will be amended by allowing interest from the date last mentioned.

[10] Lorimer has also demanded, in reconvention, that the contract sued on be rescinded. The judgment in effect rescinds the contract, though it does not do so expressly, and Lorimer has asked that the judgment be amended so as to expressly rescind the contract. He is entitled to the amendment.

For the reasons assigned, the judgment appealed from is amended by expressly rescinding the contract sought to be specifically enforced herein, and by allowing said Lorimer 5 per cent. per annum interest on said sum of $75,000 from May 25, 1920, until paid, and in all other respects said judgment is affirmed.